IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | | |
|---|---|---|
| DENISHA LIPSCOMB, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06-0307 |
| | ) | |
| DEBORAH HICKEY, Warden, | ) | |
| FPC Alderson, *et al.*, | ) | |
| | ) | |
|     Defendants.[1] | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending is the Motion of Defendants Deborah Hickey, Warden of FPC Alderson, Donna Saffold, Allen Blankenship, Dr. Neal Rehberg and Amber Nelson to Dismiss and/or for Summary Judgment filed on May 8, 2008. (Document No. 51.) By Order filed on May 16, 2008, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising her of her right to file a response to the United States' Motion to Dismiss. (Document No. 55.) Plaintiff filed her Response to Defendants' Motion to Dismiss and/or for Summary Judgment on June 12, 2008. (Document No. 56.)[2] Having examined the record and considered the applicable law, the undersigned has concluded that Plaintiff did not exhaust administrative remedies with respect to her claims in this matter and therefore hereby respectfully recommends that this matter be dismissed.

---

[1] The undersigned has identified Warden Hickey as the lead Defendant in this matter in view of the District Court's September, 2007, determination that this matter should proceed under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).

[2] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

## FACTUAL AND PROCEDURAL BACKGROUND

On April 27, 2006, Plaintiff, acting *pro se* and then in confinement at FPC Alderson, Alderson, West Virginia, filed her Complaint against the Federal Bureau of Prisons, FPC Alderson Medical Department, Dr. Rehberg, and Greenbrier Hospital a/k/a Greenbrier Valley Medical Center. (Document No. 1.) Plaintiff also filed an Application to Proceed *in forma pauperis*. (Document No. 2.) Plaintiff complained that she was rendered improper medical treatment for back pain. Plaintiff specifically claimed that as a result of the improper medical care, she continued to suffer from back pain, scarring from surgery, and had been "left with problems after the surgery that [she] did not have prior to [surgery]." (Id. at 5.)

On May 9, 2006, Plaintiff filed a notice of amendment to her Complaint adding Warden D. Hickey, Associate Warden D. Saffold, Health Services Administrator Allen Blankenship, and Dr. Rehberg as Defendants. (Document No. 5.) Plaintiff did not set forth any allegations against the proposed Defendants.

By Order filed on November 17, 2006, the undersigned granted Plaintiff's Application to Proceed *in forma pauperis* and construed Plaintiff's Complaint as being filed pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.* (Document No. 6.) Accordingly, the undersigned directed the Clerk to substitute the United States of America for the individual named Defendants named by Plaintiff because the United States is the only proper party in a suit under the FTCA. Plaintiff was also directed to notify the Court in writing if her intent was to file an action against individuals pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971), for alleged violations of her constitutional rights. In response to the undersigned's Order, on December 7, 2006, Plaintiff filed a Motion to Amend her Complaint seeking to name Warden Deborah Hickey, Associate Warden

2

Donna Saffold, Mr. Adams, RN Blankenship, as well as other unnamed individuals of FPC Alderson's medical staff as Defendants. (Document No. 7.) Plaintiff did not set forth any allegations against the proposed Defendants.

On February 6, 2007, the United States' filed a Motion to Dismiss and Memorandum in Support contending that Plaintiff's Complaint should be dismissed because Plaintiff failed to comply with the pre-filing requirements of the West Virginia Medical Professional Liability Act [MPLA]. (Doc. Nos. 10-11.)

By Order filed on March 14, 2007, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising her of her right to file a response to the United States' Motion to Dismiss.  (Doc. No. 15.)

By Order entered on March 22, 2007, the undersigned addressed Plaintiff's Motion to Amend and advised Plaintiff that the Court was unable to determine whether the proposed Defendants are proper to this civil action because Plaintiff failed to set forth any allegations against the individuals she would name as additional Defendants. (Document No. 19.) The undersigned directed Plaintiff to file a statement of her proposed claims against the individuals by April 13, 2007. Plaintiff did not do so. Rather, on April 11, 2007, Plaintiff filed her response to the United States' Motion to Dismiss. (Document No. 23.)  Plaintiff asserted that she did not have access to West Virginia statutes and case law cited by the United States in its Motion to Dismiss. Plaintiff requested that the Court not dismiss her claim due to her lack of legal expertise and reconsider its decision not to appoint her counsel. Plaintiff further requested that the Court furnish her with copies of all relevant statutes and case law. On the same day, Plaintiff also filed a Motion to Compel Production of Documents again requesting that she be provided copies of relevant statutes and case law and that she be given a reasonable amount of time to respond to the United States' Motion to Dismiss.  (Document No. 24.)  On

3

April 12, 2007, the United States filed its reply to Plaintiff's response by providing the Plaintiff with a copy of W. Va. Code § 55-7B-6 (2006 Supp.), which sets forth the pre-filing requirements for filing a medical malpractice claim in West Virginia, and the cases cited in its memorandum of law.  (Doc. No. 25.)  Plaintiff did not file a further response to the United States' Motion to Dismiss.

On July 24, 2007, the undersigned filed Proposed Findings and Recommendation.(Document No. 32.) The undersigned found that Plaintiff's claims should be considered as filed against the United States under the FTCA. The undersigned recommended that the District Court deny Plaintiff's Motion to Amend her Complaint (Document No. 7.) to add individual Defendants because she failed to file a statement of her proposed claims against them. The undersigned therefore did not consider Plaintiff's claims under Bivens and recommended that the District Court grant the United States' Motion to Dismiss Plaintiff's Complaint (Document No. 10.) because she failed to comply with the MPLA and dismiss this case.

The District Court filed a Memorandum Opinion and Order on September 20, 2007(Document No. 35.), and an Amended Memorandum Opinion and Order on September 24, 2007 (Document No. 36.). The District Court agreed that Plaintiff had not met the requirements of the MPLA but, construing Plaintiff's allegations liberally, found that they "resemble 'deliberate indifference' claims often brought by inmates alleging violations of their right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution."[3] The District Court

---

[3] To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. *Wilson v. Seiter*, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (*citing Rhodes v. Chapman*, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove

determined that this matter should go forward under <u>Bivens</u>. The District Court therefore accepted in part and rejected in part the undersigned's recommendation granting Defendant's Motion to Dismiss and dismissing Plaintiff's medical negligence claim without prejudice, granting Plaintiff's Motion to Amend and remanding this matter back to the undersigned for further proceedings under <u>Bivens</u>.[4]

On March 3, 2008, the undersigned filed a Time Frame Order. (Document No. 43.) On May 8, 2008, Defendants Ms. Deborah Hickey, Ms. Donna Saffold, Mr. Allen Blankenship, Dr. Neal

---

two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995)(*quoting Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). *See also White v. Gregory*, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the applicable standard in *Miltier v. Beorn*, 896 F.2d 848, 851-852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

[4] A *Bivens* action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395 - 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under *Bivens* must show the violation of a valid constitutional right by a person acting under color of federal law.

Rehberg and Ms. Amber Nelson filed their Motion to Dismiss and/or for Summary Judgment and Memorandum in Support. (Document Nos. 51 and 52.) Defendants contend in moving to dismiss and/or for summary judgment (Document No. 51.) as follows:

1. Plaintiff failed to exhaust administrative remedies;

2. Plaintiff's action against Warden Hickey should be dismissed because she was not properly served;

3. Defendant Blankenship has absolute immunity as an employee of the United States Public Health Service;

4. Defendant Nelson had no personal involvement in the circumstances which Plaintiff alleges;

5. Plaintiff has failed to state any constitutional violation specifically in her Complaint;

6. Plaintiff has failed to establish a claim of supervisory liability;

7. Plaintiff cannot establish that Defendants were deliberately indifferent to medical conditions;

8. Defendants are entitled to qualified immunity; and

9. Plaintiff's claims against Defendants in their official capacities are barred by sovereign immunity.

Defendants submit the Declarations of Ms. Sharon Wahl, Warden Hickey, Mr. James Blankenship, Ms. Donna Saffold and Dr. Neal Rehberg. Ms. Wahl, a Paralegal for the Consolidated Legal Center at FCI Beckley, states that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. Ms. Wahl states that she also has access to inmates' central files and medical records. Ms. Wahl states as follows in her Declaration:

7. A review of inmate Lipscomb's administrative remedy history on SENTRY reveals that she has filed approximately 149 administrative remedies during her incarceration.

6

8.      Inmate Lipscomb has not, however, filed any administrative remedies regarding the medical care and the events which are the subject of the instant case.

9.      Plaintiff's administrative remedies beginning in 2005 do not reference her back pain, the treatment thereof, her surgery, or any resultant scarring.

10.     In 2005, Plaintiff filed remedies concerning only ill-fitting shoes and chronic care medications for conditions not related to her back.

11.     Plaintiff then did not file another remedy until July 2, 2006, well after the April 27, 2006 filing of the instant Complaint.

A copy of (1) information from SENTRY respecting Plaintiff's administrative filing in 2005 and 2006[5]; (2) the response of Warden Hickey, Plaintiff's appeal and the response of Regional Director K. M. White to Plaintiff's administrative complaints in Remedy I.D. No. 390273[6]; (3) the Position Description of Health System Administrator; and (4) Plaintiff's medical records indicating her complaints of back pain and the treatment she received[7]. Warden Hickey states in her Declaration that as of April 30, 2008, she had not been served with a copy of a Summons and Complaint in this matter

---

[5] These documents indicate that on June 13, 2005, Plaintiff complained that she could not get the proper size of shoe she needed. Her administrative complaint was designated Remedy I.D. No. 379054. On September 29, 2005, Plaintiff complained that she was not receiving chronic care medications. This administrative complaint was designated Remedy I.D. No. 390273. On July 20, 2006, Plaintiff complained about a lack of seating and space in the law library. Her complaint was designated Remedy I.D. No. 420778. Plaintiff complained that she was experiencing second hand smoke from the staff on the same day. This complaint was designated Remedy I.D. No. 420780. On November 3, 2006, Plaintiff complained of smoking related issues, and her complaint was designated Remedy I.D. No. 432595.

[6] These documents indicate that Plaintiff complained that she was not receiving medications for physical ailments not related in any way to her back.

[7] The medical records include consultation and operative reports with respect to Plaintiff's February, 2005, back surgery at Greenbrier Valley Medical Center. The medical records further include clinical notes pertaining to Plaintiff's visits to sick call at FPC Alderson between January 4 and October 26, 2005. The clinical notes confirm as the record reflects that Plaintiff complained of back pain throughout January, 2005, and was taken to the Greenbrier Valley Medical Center Emergency Room on or about February 6, 2005, and admitted. The clinical notes indicate that Plaintiff was returned to FPC Alderson on February 17, 2005. The notes thereafter, to the extent that they a legible, do not appear to indicate that Plaintiff complained of further problems or required any further treatment of her back.

and while she was Warden at FPC Alderson, she "was not personally involved in the medical decisions regarding the medical care of inmate Lipscomb or any other inmate." Mr. Blankenship, Health Services Administrator at FPC Alderson, states in his Declaration that he is a Commissioned Officer of the United States Public Health Service[8] and, as Health Services Administrator, he supervises and is not directly involved in patient care. Ms. Saffold states in her Declaration that she was Associate Warden at FPC Alderson and "was not personally involved in the medical decisions regarding the medical care of inmate Lipscomb or any other inmate." Dr. Rehberg, a physician at FPC Alderson, summarizes Plaintiff's medical records from October 23, 2004, when Plaintiff arrived at FPC Alderson through August, 2005.

By Order filed on May 16, 2008, Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising her of her right to file a response to the United States' Motion to Dismiss. (Document No. 55.) Plaintiff filed her Response to Defendants' Motion to Dismiss and/or for Summary Judgment on June 12, 2008. (Document No. 56.) Plaintiff indicates that she began experiencing serious back pain on January 18, 2005, and "requested replacement of her

---

[8] As a Commissioned Officer in the United States Public Health Service, Mr. Blankenship and has absolute immunity from suit based upon conduct in the course of his employment under 42 U.S.C. § 233(a). The statute provides as follows:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 . . . for damages for personal injury, including death, resulting from the performance of medical, surgical, dental or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee . . . whose act or omission gave rise to the claim.

Congress has made proceeding under the Federal Tort Claims Act for injuries resulting from the performance of medical functions within the scope of Mr. Blankenship's employment the only course available.

leads for her TENS unit." On January 24, 2005, Plaintiff went to sick call and was offered Tylenol

for her pain. On January 27, 2005, an x-ray was taken, and Dr. Rehberg examined her finding redness

on both sides of her spine. Plaintiff was provided with a walker and assigned inmate companions to

assist her. On February 6, 2005, Plaintiff was taken to the emergency room of Greenbrier Hospital.

She was found to have bilateral abscesses, and surgery was performed. Plaintiff asserts that

Defendants were deliberately indifferent to her serious medical needs in failing to notice redness on

both sides of her spine sooner, to perform tests and lab work, to provide medications and to treat her

condition for nineteen days. Plaintiff indicates that she had a long, difficult and painful period

following the surgery. Addressing Defendants' claim that she failed to exhaust administrative

remedies, it appears that Plaintiff is asserting that an eight month period of time passed from the date

she became ill to the date she recovered after surgery, and she was therefore "out of time for the

remedy stage. I received several letters, motion and order to Dismiss this action and not once did the

Defendant bring up failure to exhaust my Administrative Remedy."

## THE STANDARD

### Motion to Dismiss Under Rule 12(b)(6).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements

will not do. Factual allegations must be enough to raise a right to relief above the speculative level

on the assumption that all of the complaint's allegations are true." Bell Atlantic Corporation v.

Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007)(reference to Conley v.

Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), omitted.) Dismissal is proper under Rule

12(b)(6) where, construing the allegations of the Complaint in a light most favorable to the Plaintiff and assuming the alleged facts to be true, it is clear as a matter of law that no relief could be granted under any set of facts which could be proven consistent with the allegations. Deference is given to *pro se* Complaints. *See* Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.). A *pro se* Complaint may therefore be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *quoting* Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

**Summary Judgment.**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356.

10

Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## **DISCUSSION**

Defendants contend that "Plaintiff has not filed any administrative remedies regarding the medical care and the events which are the subject of the instant case." (Document No. 52, p. 5.) Considering Plaintiff's response liberally as the Court must, the undersigned finds that Plaintiff responds that due to the severity of her illness and the length and difficulty of her recovery, the time passed within which she could file an administrative complaint. The undersigned finds that Plaintiff asserts therefore that she was unable to file, and effectively prevented from filing, an administrative complaint because of her back problems and so the administrative remedy process was unavailable to her.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[9] <u>Woodford v. Ngo</u>, 548 U.S.

---

[9] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

81, 90 - 91, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006)("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 922, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). The Fourth Circuit has determined that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. Anderson v. XYZ Correctional Health Services, 407 F.3d 674 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

"[T]here is no futility exception to the PLRA's exhaustion requirement." <u>Massey v. Helman</u>, 196 F.3d 727, 733 (7th Cir. 1999), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. <u>Moore v. Bennette</u>, 517 F.3d 717, 725 (4th Cir. 2008)("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. * * * Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. * * * Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively. * * * Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond." (Citations omitted.));<u>Dale v. Lappin</u>, 376 F.3d 652, 656 (7th Cir. 2004); <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedy for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.) If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), Court's Syllabus (c)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some,

13

but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. *See* Neal v. Goord, 267 F.3d 116, 121-122 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court.[10]

Several administrative procedures are available to Federal inmates depending upon the circumstances which cause them to have grievances. The Bureau of Prisons' Administrative Remedy Program, 28 C.F.R. §§ 542.10 - 19, is a process "through which inmates may seek formal review

---

[10] Federal inmates have no constitutional right to participate in the BOP's administrative grievance proceedings. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.), *cert. denied*, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). "[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Flick*, 932 F.2d at 729.

14

of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10.[11] The

Administrative Remedy Program is not all-encompassing however. 28 C.F.R. § 542.12 (b) provides

as follows:

> Requests or Appeals will not be accepted under the Administrative Remedy Program
> for claims for which other administrative procedures have been established,
> including tort claims, Inmate Accident Compensation Claims, and Freedom of
> Information or Privacy Act requests. Staff shall inform the inmate in writing of the
> appropriate administrative procedure if the Request or Appeal is not acceptable
> under the Administrative Remedy Program.

Depending upon at what level an inmate initiates it, the Bureau of Prison's Administrative Remedy

Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is

required first to attempt to resolve her complaints informally by the submission of an "Inmate

Request to Staff Member" form. 28 C.F.R. § 542.10. The inmate's request may be rejected if

improper, and the inmate will then be advised of the proper administrative procedure. Section

542.12(b) provides as follows:

> Requests or Appeals will not be accepted under the Administrative Remedy Program
> for claims for which other administrative procedures have been established,
> including tort claims . . . . Staff shall inform the inmate in writing of the appropriate
> administrative procedure if the Request or Appeal is not acceptable under the
> Administrative Remedy Program.

Within 20 days after the circumstances occurred which are the subject of the inmate's complaints,

---

[11] Before proceeding under the Federal Tort Claims Act in the District Court, an administrative claim must first be submitted to the appropriate agency and denied. *See* 28 U.S.C. § 2675(a). *See also Bellomy v. United States*, 888 F. Supp. 760 (S.D.W.Va. 1995). Filing a timely administrative claim is jurisdictional and cannot be waived. *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994) (*citing Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986), *Muth v. United States*, 1 F.3d 246 (4th Cir. 1993). Thus, before an inmate can bring a claim under the Federal Tort Claims Act, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.11 and 543.30 to 543.32. The administrative process which inmates must exhaust when they have complaints under the Federal Tort Claims Act is spelled out at 28 C.F.R. §§ 14.1 - 14.11.

the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmates Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10.  If the inmate's Request went initially to the Regional Director, the inmate may appeal an unfavorable response to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete.

It is clear that Plaintiff did not complain administratively utilizing the BOP's Administrative Remedy Program about the Defendants' delay in diagnosing and treating her back condition or their failure to treat her after her surgery as she alleges in this case. The undersigned finds in view of the United States Supreme Court's decision in Woodford v. Ngo that exhaustion of administrative remedies is required before a Bivens action may be commenced in the District Court. It does not appear that any exemption based upon mental or physical impairments has been recognized. See Baker v. Schriro, 2008 WL 622020, *5 (D. Ariz.)("[I]n failing to attempt exhaustion, Plaintiff did not provide an opportunity for prison officials to address his complaints or to excuse the timeliness requirement in light of Plaintiff's health conditions.") Because Plaintiff failed to exhaust administrative remedies with respect to her claims in this matter, the undersigned concludes, and

16

hereby respectfully recommends, that this matter should be dismissed. It is not necessary to address the other reasons which Defendants assert for dismissing this case. The undersigned finds generally, however, that they have merit. The undersigned further finds from the record as it currently exists that the circumstances underlying Plaintiff's claims in this matter do indicate deliberate indifference to Plaintiff's serious medical needs in violation of her rights under the Eighth Amendment of the United States Constitution. Defendants responded to Plaintiff's complaints of back pain conservatively at first, and about a month later when it appeared that Plaintiff's back pain was acute, they took her to the hospital. Surgery was performed, and Plaintiff's pain was alleviated though she experienced discomfort over the period of time while she was healing and recovering. It appears that Defendants' response to Plaintiff's serious medical need was reasonable and prompt.

## PROPOSAL AND RECOMMENDATION

The undersigned respectfully proposes that the District Court confirm and accept the foregoing findings of fact and **RECOMMENDS** that the Court **GRANT** the United States' Motion to Dismiss (Document No. 51), **DISMISS** this matter and remove it from the Court's docket.  The parties are is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: February 18 , 2009.

R. Clarke VanDervort
United States Magistrate Judge